LINTON, Estate of, In re: BOWERS, Tax Commr., Appellant
v. FOURSQUARE GOSPEL CHURCH OF CAMBRIDGE,
Appellee.

Ohio Appeals, Fifth District, Guernsey County.

No. 385. Decided January 4, 1961.

Mr. Mark McElroy, attorney general, and Mr. Joseph L. White, assistant attorney general, for appellant.
Mr. Frank C. Leyshon, for appellee.

## Statement Of The Case

This cause is before this court on appeal on questions of law from the Probate Court of Guernsey County, Ohio. On February 19th, 1960, that court sustained a motion of the Foursquare Gospel Church filed September 25th, 1959, to redetermine inheritance taxes theretofore assessed and paid on its legacy of $20,000.00 and to order the Department of Taxation of the State of Ohio to refund the sum of $1400.00 plus interest alleged to have been paid by the executor of the estate (sic May 19, 1958). Said order of February 19, 1960, is as follows:

"This cause coming on for hearing on the motion of the Foursquare Gospel Church of Cambridge, Ohio, to be exempted from tax and to order the sum of $1400.00 repaid to it, the Court does hereby sustain said motion, and does hereby exempt said Foursquare Gospel Church of Cambridge, Ohio, from said tax assessed against it under Section 5731.09, Revised Code, does hereby order the repayment to said Foursquare Gospel Church of Cambridge, Ohio, the sum of $1400.00 with interest thereon from the 19th day of May, 1958."

No appeal was taken from this order. However, on March 24, 1960, appellant filed exceptions to said order under the presumed authority of Section 5731.38, Revised Code. Upon motion of the appellee made May 9, 1960, these exceptions were stricken from the files on August 25, 1960. From this order appellant perfected this appeal.

The matter is now before this court, first on a motion to dismiss this appeal and second, if this should be overruled, on the merits, as to the legality of the re-determination of the tax and the refund order. Both propositions have been briefed and argued to this court. The first proposition depends on whether the order of February 19th or August 25th was the final order herein. The latter proposition involves several interesting questions.

From the transcript (there is no bill of exceptions) the following facts and sequence of events appear. On April 26, 1956, W. A. Linton died testate. On May 17, 1956, his will was admitted to probate and shortly thereafter Willard Patton qualified as executor. After the execution of the will the testator re-married and his spouse, Ruth P. Linton, elected on June 22, 1956, to take under the statute of descent and distribution and presumably took thereunder one-half of the property besides her statutory exemption and years support. The pertinent provisions in this will are as follows:

"*ITEM IV*. All the rest and residue of my property, real and personal of every kind and description, wheresoever situate, which I may own at the time of my decease, I give, devise and bequeath to Willard Patton, cashier of the Central National Bank, Cambridge, Ohio, in trust for the uses, purposes and benefits hereinafter set forth:

"(1) I direct my aforesaid Trustee, if I die seized of stocks and bonds that have a market value of over Five Thousand Dollars ($5,000.00), that these securities are to be orderly liquidated by him within ten (10) years after my death. I direct my Trustee to be sure that market conditions are favorable and strong for the sale of said securities, and from the proceeds of the orderly liquidation of said securities I direct my Trustee to pay Ten Thousand Dollars ($10,000.00) to the Foursquare Gospel Church of Cambridge, Ohio, and I direct my Trustee that the balance of the proceeds realized from the orderly liquidation of my aforesaid securities, or any income realized from them during said period of orderly liquidation, are to be paid to Healing Waters, Inc. of Tulsa, Oklahoma, to be used by it for religious broadcasts on either radio or television, or both, and or for missionary work.

"(2) I hereby direct my Trustee, hereinbefore named, to make an orderly liquidation of my real estate holdings and coal properties, within ten (10) years after my death, that is, that he is requested over that period of years to get the highest and best price for said holdings, but he is not to liquidate them all within any given years, but in an orderly fashion within ten (10) years herein prescribed. From the proceeds realized from the orderly liquidation of my real estate and coal property holdings, I direct said Trustee to pay Ten Thousand Dollars

($10,000.00) of said proceeds to the Foursquare Gospel Church of Cambridge, Ohio, I direct said Trustee further to pay Fifteen Thousand Dollars ($15,000.00) to my brother, J. A. Linton of Quaker City, Ohio, if he be living, and if he be deceased then to his children or their heirs, share and share alike, and whatever income may be realized from said holdings, and the balance of the proceeds realized from the orderly liquidation of said holdings, I direct that my Trustee pay said proceeds to Healing Waters, Inc., of Tulsa, Oklahoma, to be used for religious broadcasts on either radio or television, or both, and or for missionary work. I direct that my Trustee in the management of the aforesaid trust property use his best judgment and ability within the bounds prescribed by law, to carry out the purposes of the trust."

In his application to be appointed executor, Patton estimated the value of the estate at about Seventy Thousand Dollars. The appraisal of the estate filed June 22, 1956, showed total assets of $127,871.70 of which $82,860.00 was real estate. The personal property consisted of six hundred shares of Howe Sound Company valued at 22½ per share and 1200 shares of the common stock of Bulova Watch Company valued at 20 3/4ths per share and $6611.70 cash. On July 3, 1956, an application was filed by Patton, Executor, to determine inheritance tax and by entry on the same date that was done. It determined among other things that the successor, Willard Patton, Trustee under the will for J. A. Linton, brother, had a balance subject to tax of $14,500.00, the tax upon which was $725.00; that Foursquare Gospel Church, balance subject to tax was $20,000.00; tax $1400.00; Healing Waters, Inc., balance subject to tax $16,647.43, tax $1165.32. On July 24, 1956, an amended application for inheritance tax determination was filed and on the same date a re-determination was made which increased the tax on Healing Waters, Inc. to $1576.22 and Ruth Linton to $850.00. The other determinations were not affected. The total tax was determined to be $4621.57. As shown by Patton Executor in his first account filed on June 26, 1957, he did on August 28, 1956, pay to Delma Shaw, Treasurer of Guernsey County, the sum of $4298.06 inheritance taxes. This included the appellee's share less the cash discount.

On April 15, 1957, Patton, Executor, filed a petition in the

Probate Court for distribution of assets in kind which included the Howe Sound Company and the Bulova Company stock. On the same date this was ordered and 300 shares of the Howe Sound and 600 shares of the Bulova stock was ordered distributed each to Patton, Trustee, and to Ruth P. Linton. The value of this stock to each being $19,200.00.

On May 22, 1957, another application was filed by the executor to transfer various parcels of real estate to Patton, Trustee, and to Ruth P. Linton, 50 per cent to each, and on the same date this was ordered.

On June 26, 1957, Patton, Executor, filed his first account showing the above transactions and a balance in his hands of $5788.47. On August 10, 1957, this account was approved, no exceptions taken thereto or appeal prosecuted.

On July 8, 1957, Patton made application to be appointed Trustee under Item IV of the will, listing assets of probable value of $54,000.00; $14,000.00 in personal property and $40,000.00 in real estate. He was appointed as such testimentary Trustee on July 9, 1957, gave bond and qualified. His inventory as Trustee filed shortly thereafter listed assets in approximately the above amount.

Effective August 30, 1957, Section 5731.09, Revised Code, was amended to provide that succession of property to "any established religious organization" shall not be subject to tax.

On August 19, 1958, Patton, Executor, filed his second and final account. In this he credits himself as having received on May 20, 1958, from J. A. Linton, Ruth P. Linton and Foursquare Gospel Church, inheritance tax payment in the total sum of $2850.07. This account was approved October 10, 1958, no exceptions were filed thereto or an appeal taken.

On July 11, 1959, Patton as Trustee filed his first account in which he charges himself with a total of about $60,000.00 received and credits himself, among other things, as having paid Patton, Executor, on May 19, 1958, the sum of $2850.07 as a repayment of inheritance taxes advanced. He also credits himself as having paid on the same date to the Foursquare Gospel Church as a net bequest less inheritance tax the sum of $8698.00. (He also credits himself as having paid to J. A. Linton his bequest less inheritance tax in the sum of $14,325.75 and to Healing Waters, Inc. a partial distribution of $10,000.00,

with total credits of about $40,000.00, leaving a balance in the Trustee's hands of about $20,000.00. No exceptions were filed to this account and the same was approved September 10, 1959.)

The record does not disclose that any other payments have ever been made to the Foursquare Gospel Church.

Then as above stated, the appellee on September 25, 1959, made its motion to re-determine inheritance taxes and asked for a refund from the appellant.

It is evident from the above recitation that when the Probate Court made its inheritance tax determination, the estate in Patton, Trustee, as one coming under Section 5731.28, Revised Code, providing for determination of tax when estates are dependent upon conditions was not considered as applicable to this estate. Neither did the court under the following Section 5731.29, Revised Code, make a temporary order.

It is also apparent from the record that Patton, Executor, immediately paid this tax in order to get a cash discount among other things. It was not paid under protest. It is also apparent that it was almost a year later before Patton qualified as testimentary Trustee under the will. Just when some one decided that the inheritance taxes on the property bequeathed to Patton, Trustee, was an obligation of the Trustee and not the Executor, we don't know—but it must have been on or before May 20, 1958, when the amount thereof was repaid by Patton, Trustee and received by Patton, Executor, and upon which date the Foursquare Gospel Church received its first $10,000.00 under the will less inheritance tax theretofore paid. At that time the statute had been amended for more than nine months.

It is also to be observed that no question is raised herein but that the appellee would have been exempt under the amended statute if it is applicable to the present situation.

Perhaps the above recitation of facts is longer than necessary but it does give the background to the problems presented, and has no relation to the shortness of the opinion following.

*Per Curiam.* There are many nice questions involved herein and it is not too easy to separate the chaff from the grain. Upon several questions this court is not in agreement and it seems more desirable simply to state the decisive ones upon which we are agreed.

First we consider the motion to dismiss this appeal. The decision thereon depends on whether the final appealable order was the one of February 19, 1960 or the one of August 25, 1960. If the order of February 19th was a final order, since no appeal was perfected thereto within time, this appeal must be dismissed. If, on the other hand, the order of August 25th was the final order, then the appeal was properly perfected and the motion must be overruled.

The argument of the appellee is that this motion was filed under the general jurisdiction of the Probate Court as provided in Section 2101.24, Revised Code, and that the order sustaining the same on February 19th was final and not subject to the provisions of Sections 5731.-1-56, Revised Code, and that an appeal therefrom must be taken in accordance with the general appeal sections of the Revised Code.

On the other hand the appellant argues that the general powers of the Probate Court are limited in inheritance tax matters by the special sections above stated and that Sections 5731.20 and 5731.38, Revised Code, must be read together and that the latter section is controlling. That section gives the tax commissioner or any dissatisfied person 60 days within which to file exceptions to a determination of tax and that Section 5731.40, Revised Code, provides for an appeal therefrom. These exceptions were filed within the 60 days period of the February 19th order.

Without entering into a detailed discussion, it is our judgment that the special provisions of the inheritance tax law are controlling over the general powers of the Probate Court as defined in Section 2101.24, Revised Code and as further defined in Section 5731.21, Revised Code, both of which must be read together. Consequently, we hold that Section 5731.38, Revised Code, controls in the instant case; that the final appealable order was the one of August 25th, 1960; that the appeal therefrom was properly perfected under Section 5731.40, Revised Code, and consequently the motion to dismiss the appeal must be and the same hereby is overruled.

Now coming to consider the merits of the case and having decided that the inheritance tax law as contained in Section 5731.-1-56, Revised Code, is controlling, we are faced with the proposition as to whether or not the succession to the appel-

lant, the Foursquare Gospel Church, comes within the provisions of Sections 5731.23, Revised Code and Section 5731.28, Revised Code. The latter section provides for inheritance tax on estates dependent upon conditions and refunds thereon.

One vital question is as to whether or not the estate limited to the Foursquare Gospel Church through the Trustee, comes within this section. The argument in substance by the appellee is that the estate limited by Article IV of the will is an "executory devise" as defined in the case of *Heath* v. *Cleveland*, 114 Ohio St., 535, syllabus four and discussed at page 548. It is further argued that in any event the estate is not limited directly to the Church but to the Trustee in trust and that numerous contingencies might intervene to prevent the Church from ever getting this money.

On the other hand the appellant claims that under the will and the facts in this case there never was any question as to the ultimate succession of the appellee; that the estate vested in the appellee at the death of the testator and only the enjoyment was postponed.

The proposition is extremely arguable and we are not entirely agreed thereon.

However, in our minds the decisive factors are that (1) the actual determination of inheritance tax by the Probate Court was not made under Section 5731.23-28, Revised Code, and was not a temporary order. (2) That these payments were made by the executor and Trustee and their accounts were approved without exceptions thereto. (3) That they were made voluntarily without protest and under a mistake of law. (4) That the appellee received the same with presumably full knowledge of the change of the law and without protest at that time.

We can only conclude that the situation comes within that well known principle of law that paymens made voluntarily under a mistake of law, without fraud, are not recoverable.

Consequently, it is our judgment that the Probate Court erred as a matter of law in striking the exceptions from the files and in not sustaining the same. The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

PUTNAM, P. J., McLAUGHLIN and McCLINTOCK, JJ., concur.